UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SILMA-DEL LANGLEY,
   Plaintiff,

v.

STATE OF RHODE ISLAND,
DEPARTMENT OF CORRECTIONS,
   Defendant.

C.A. No. 24-cv-031-JJM-PAS

## ORDER

Plaintiff Silma-Del Langley retired from the Rhode Island Department of Corrections ("RIDOC") after thirty-three years of employment because she was not promoted and was retaliated against for complaining about her treatment. She sued RIDOC for race, gender, and age discrimination and retaliation under federal and state statutes. RIDOC moves to dismiss her complaint; specifically, RIDOC argues that her discrimination claims should be dismissed because they fall outside the statute of limitations, her retaliation claim should be dismissed for failure to exhaust her administrative remedies, and her state law claim should be dismissed because it is barred by RIDOC's Eleventh Amendment sovereign immunity. ECF No. 11.

### I. BACKGROUND

RIDOC hired Ms. Langley as a Clinical Psychologist at the Adult Correctional Institute ("ACI") on December 20, 1987. She was the first Black female Deputy Warden at RIDOC.

In 2017, three positions for Acting Warden became available and Ms. Langley submitted timely applications for each. Soon after, RIDOC's then Assistant Director of Institutions and Operations (the "ADIO") called Ms. Langley and informed her that she would be interviewed for the position of Acting Warden at Minimum Security alongside two other Deputy Wardens. On January 19, 2018, the ADIO met with and informed Ms. Langley she was not chosen for the position at Minimum Security. When Ms. Langley inquired further, the ADIO only responded that he had "a gut feeling" she was not the person for the position. In February 2018, Carole Dwyer, a white woman serving as Warden of Medium who had previously served as Warden at Minimum from 2009 to 2011, was reappointed to that position. The two other Deputy Wardens that were interviewed for the Minimum position, both of whom were white men and allegedly less qualified, were appointed Acting Wardens at Medium and Intake. In October 2018, both Acting Wardens became Wardens.

At sixty-four years old, Ms. Langley expected this round of promotions to be her final opportunity to become Warden. Having seen ten less qualified white men promoted during the span of her career, Ms. Langley filed an Employment Discrimination Questionnaire ("Questionnaire"), including a four-page attachment reciting the underlying facts of her charge, with the Rhode Island Commission for Human Rights ("RICHR") on April 29, 2019. The Questionnaire included the following declaration: "You will be contacted regarding the filing of a formal charge once your submission has been reviewed. This is not a formal charge of discrimination." ECF No. 12-1.

Four months later, Ms. Langley alleges RIDOC retaliated against her. On August 29, 2019, Ms. Langley was assisting with an inmate who voluntarily disclosed to her that her sexual assault allegation against a correctional officer was false. Ms. Langley reported the recanting of the abuse. On September 5, 2019, Ms. Langley received an email from ADIO requesting she and other individuals involved in the incident submit reports by the end of the day. Ms. Langley complied but inadvertently submitted a previous draft that included errors she asserts were immaterial to the central event.

On September 18, 2019, ADIO visited Ms. Langley, accused her of lying in her report and, without providing evidence supporting such claims, alleged she had violated the Prison Rape Elimination Act ("PREA"). ADIO requested that Ms. Langley respond in writing to the allegations the next day, which she did. A few days later, Ms. Langley was able to recover her initial revised draft of the August 29th incident, which she then submitted alongside her mistaken draft and a written explanation. The next day, ADIO emailed Ms. Langley telling her that she had "one last opportunity to clarify the remaining issues in the incident," by end of day. But Ms. Langley had left work for a medical appointment and did not see the email. Because she failed to respond, Ms. Langley was summoned to Inspector Brown's office, which she considered "humiliating, and reflected treatment more typically afforded to inmates than to DOC managers." Ms. Langley considered ADIO's approach "demeaning," and she "inferred that he was trying to pressure her into

3

admitting to something she had not done," and was "intent on harassing and discriminating against her and retaliating against her."

Ms. Langley asserts that RIDOC's treatment of her was "strikingly different" from the treatment afforded to Captain Donald Panarello, a white man, for the same substantive issues at the core of ADIO's inquiry. Ms. Langley contends Captain Panarello faced no criticism and received no discipline after he submitted his initial report two weeks late, misstated the precise timeline in his incident report, flouted PREA protocols, and disobeyed direct orders from Ms. Langley who was his superior. Contrarily, Ms. Langley was the subject of a "scathing 'investigatory' report" by ADIO, accusing her of conduct unbecoming of a correctional employee, dereliction of duty, insubordination, and dishonesty. ADIO also filed an Administrative Action Form referring Ms. Langley to a disciplinary hearing and requested a meeting to inform her of the hearing without notice of the meeting's purpose, which she asserts was against policy. There is no indication ADIO considered Ms. Langley's spotless disciplinary record, despite instructions on the form advising him to do so. At the disciplinary hearing, Ms. Langley received a written reprimand for insubordination and dereliction of duty. Ms. Langley, who was represented by counsel said she "felt like a sitting duck whose wings had been clipped," at the disciplinary hearing.

Months after receiving this discipline, RIDOC transferred Ms. Langley to the Intake Service Center, a more stressful and less desirable working environment often referred to by correctional workers as "the dungeon." She felt she had been "put out to pasture" and alleges that she was demoralized by continuous discriminatory

4

treatment and came to realize she would remain subject to retaliation and be further denied opportunities for promotion, despite having brought her concerns to the proper state and federal authorities. Ms. Langley resigned from RIDOC in June 2020, "with great sadness and bereft of other options."

When Ms. Langley filed her Questionnaire the previous year, the form noted that RICHR would contact her about making a formal charge. ECF No. 12-1. Having heard nothing, Ms. Langley reached out to RICHR a few times to inquire about the status of filing a formal charge and they told her that she would get a call back. RICHR did not contact her until sometime in 2020 and they told her that the delay was the result of a paperwork error. Ms. Langley notes the COVID-19 pandemic closed the RICHR office that had detrimentally affected RICHR's ability to communicate and process her Questionnaire.

Once Ms. Langley heard from the RICHR and received guidance on the process, she filed a signed and notarized formal Charge of Discrimination with RICHR on September 17, 2020. ECF No. 12-2. RIDOC raised timeliness issues with RICHR, prompting Ms. Langley to file a "Report of Discrimination in 2019" ("Report") providing further details of her charge. The State moved to strike the Report and moved to dismiss her entire charge as untimely. RICHR issued a decision finding that it considered the April 2019 Questionnaire a charge. It denied the motion to strike the Report and denied the motion to dismiss, finding that the timely allegations of discrimination in Ms. Langley's submissions (including the September 2020 formal

charge) warranted further investigation. RICHR issued a Right to Sue letter; this lawsuit followed.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept a plaintiff's allegations as true and construe them in the light most favorable to him. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). "A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–48 (1957)). When a defendant raises a statute of limitations defense in its motion to dismiss, dismissal "is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998).

## III. DISCUSSION

RIDOC moves to dismiss Ms. Langley's FEPA claims as barred by the Eleventh Amendment. Additionally, RIDOC moves to dismiss all allegations in Ms. Langley's complaint of discriminatory treatment that fall outside the Title VII, ADEA, and

FEPA statutes of limitations and moves to dismiss her retaliation[1] claim for failure to exhaust administrative remedies.

### A.   ELEVENTH AMENDMENT IMMUNITY

RIDOC moves to dismiss Ms. Langley's FEPA claim, arguing that it is immune from suit in federal court under the Eleventh Amendment. Ms. Langley argues RIDOC waived any immunity under the Rhode Island Tort Claims Act, R.I. Gen. Laws § 9-31-1, because her FEPA claims sound in tort.

The law is clear that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "The test for finding that a state has waived its Eleventh Amendment immunity is a stringent one." *Acevedo López v. Police Dep't of P.R.*, 247 F.3d 26, 28 (1st Cir. 2001) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Waiver of such immunity "must be stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Acevedo López*, 247 F.3d at 28 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quotations omitted). Furthermore, "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*." *Atascadero*, 473 U.S. at 241.

---

[1] RIDOC argues for dismissal of a disparate impact claim, but Ms. Langley asserts that she is not alleging one, so the Court does not address it.

7

The parties take two different tacks in arguing for and against waiver. Ms. Langley asserts that the Rhode Island Tort Claims Act allows the state to be liable in all tort actions, relying on its "broad waiver of sovereign immunity, including Eleventh Amendment immunity." *Pride Chrysler Plymouth, Inc. v. R.I. Motor Vehicle Dealers' License Comm'n*, 721 F. Supp. 17, 23 (D.R.I. 1989). Acknowledging that her FEPA claim is not a common law tort per se, Ms. Langley advocates that the Court should conclude that it is a tort and to find that RIDOC is not immune. RIDOC essentially argues that the Court does not need to address whether a FEPA claim is a tort because the statutory language makes clear that it did not subject itself to suit in federal court.

The Court will stay out of the murky[2] tort designation water because, considering the stringent waiver requirements, it finds that the State has not waived its sovereign immunity. There is no language in the FEPA statute indicating that the State intended to subject itself to suit in federal court for employment-based discrimination under FEPA. *Atascadero*, 473 U.S. at 241. Conversely, FEPA

---

[2] Ms. Langley cites cases where courts have likened discrimination claims to tort claims. *See* ECF No. 15 at 20. None of these cases addressed whether a state had waived sovereign immunity under the Eleventh Amendment when making this analogy. *See Perez-Serrano v. DeLeon-Velez*, 868 F.2d 30, 33 (1st Cir. 1989) (a Title VIII claim that "sounds basically in tort" is characterized properly as "legal" for purposes of the 7th Amendment); *Krause v. UPS Supply Chain Sols., Inc.*, Civil Action No. 08-cv-10237-DPW, 2009 WL 3578601, at *5 (D. Mass. Oct. 28, 2009) (for choice of law analysis); *Kennicott v. Sandia Corp.*, 314 F. Supp. 3d 1142, 1171 (D.N.M. 2018) (for choice of law analysis); *Randolph v. Cooper Indus.*, 879 F. Supp. 518, 522 (W.D. Pa. 1994) (Title VII claim sounds in tort as opposed to contract so Labor Agreement provision does not apply); *McMillan v. Lincoln Fed. Sav. & Loan Ass'n*, 678 F. Supp. 89, 92 (D.N.J. 1988) (a Title VIII claim that "sounds basically in tort" is characterized properly as "legal" for purposes of the 7th Amendment).

specifically states that, "[a] complainant shall have the right to commence suit in the superior court within any county," R.I. Gen. Laws § 28-5-24.1, after receiving an unsatisfactory administrative response.

Ms. Langley argues that a state court cannot deprive a federal court of its jurisdiction and tries to distinguish the statute's explicit forum designation as procedural rather than jurisdictional. The statutory language is clear, and the Court will not entertain an otherwise nonsensical and unnecessarily obtuse reading. The Court cannot find that RIDOC has waived its Eleventh Amendment immunity as to Ms. Langley's FEPA claim where FEPA states that suit shall be filed in state court and the standard is the State must unequivocally express its consent to suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Therefore, the Court grants RIDOC's motion to dismiss that claim.

### B.   STATUTE OF LIMITATIONS

The majority of RIDOC's motion is rooted in its assertion that the April 29, 2019, Questionnaire and four-page attachment is not a formal charge and, so much if not all, of the conduct Ms. Langley alleges was discriminatory and retaliatory occurred outside of the statute of limitations. The Court will begin its analysis there.

#### 1.   RICHR Charge

Courts have wrestled over what constitutes a "charge" where an entity questions whether a plaintiff has met the timeliness and verification requirements under the regulatory schemes. Title VII specifies that "[c]harges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b); *see* 29 CFR § 1601.9 (1992)

9

(procedural regulations specify that "[a] charge shall be in writing and signed and shall be verified."). The ADEA does not specify that a charge must be sworn or notarized. *See* 29 U.S.C.A. § 629(d); *Roth v. R. I. Hosp. Tr. Nat. Bank*, 848 F. Supp. 15, 16 (D.R.I. 1994) (ADEA "provisions contain no language requiring oaths or notarization."). Under Title VII and the ADEA, charging parties have three hundred days after the alleged unlawful employment action occurred to file a charge. RICHR regulations provide that the charge shall be in writing, signed, and notarized. 515-515 R.I. Code R. 10-00-2.4(C). The charge must identify the parties involved and contain a concise statement of facts outlining the unlawful discriminatory practice, including the dates. 515 R.I. Code R. 10-00-2.4(D). The charge must be filed no later than within one year after the discriminatory conduct occurred. 515 R.I. Code R. 10-00-2.4(E).

Admittedly, Ms. Langley's initial filing with RICHR did not precisely comply with the statutes and regulations. However, "Congress presumably did not mean to affect the nature of Title VII as 'a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.'" *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115 (2002) (quoting *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 124 (1988)). Ms. Langley, when unrepresented, filed an unsigned and unnotarized Questionnaire, along with a four-page statement detailing her claims. While the Questionnaire stated that it was not a formal charge, it also promised that she would be "contacted regarding the filing of a formal charge once your submission has been reviewed." Ms. Langley was never contacted but, after multiple attempts to reach

10

RICHR, she did hear from them and was assisted in filing a formal charge in September 2020 that complied with the rules.

RICHR rules provide guidance where a filing within the statutory period is inadequate, "[a] charge or any part thereof may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date." 515 R.I. Code R. 10-00-2.4(I); *see also* 29 C.F.R. § 1601.12(b) (Title VII requirements for amendment of charge and relation back). That formal charge cured the technical defects in the original filing. *See Lynchburg*, 535 U.S. at 113 (noting that verification "demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC").

And, significantly, RICHR treated the Questionnaire and its supplement as a formal charge, which triggered its investigative process. The State moved to dismiss Ms. Langley's charge as time barred and moved to strike her Report. RICHR denied both of those motions, finding that not only was the Questionnaire a charge, but also that there were timely allegations of discriminatory and retaliatory conduct that required further investigation. RICHR acknowledged in its "Right to Sue" letter that the charge was filed on April 29, 2019. RICHR never notified Ms. Langley that she had not yet filed a charge, nor did RICHR contact Ms. Langley about filing a formal charge once her submission had been reviewed as the Questionnaire indicated until sometime in 2020. Only then was she counseled about filing a formal charge, which she did in September of 2020.

Justice requires, and the law permits, the Court to conclude that Ms. Langley's April 2019 Questionnaire and supplement constituted a formal charge. An unrepresented person bringing a charge of discrimination and retaliation claim before RICHR should not be held to an unreasonably rigid standard. *Fed. Exp. Corp. v. Holowecki,* 552 U.S. 389, 406 (2008) (holding that a questionnaire asserting Title VII claims can be a charge where it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights."). "Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." *Id.; see Aly v. Mohegan Council, Boy Scouts of Am.,* 711 F.3d 34, 42 (1st Cir. 2013); *see also Roth,* 848 F. Supp. at 16 (ADEA). And the First Circuit cautioned against "undermining the remedial scheme Congress adopted," by adhering to a rule construing ambiguity against the drafter. *Aly,* 711 F.3d at 42.

While the Court acknowledges the importance of sufficient notice, timeliness, and proper filings, it is most appropriate in this instance to prioritize substance over form when addressing a procedural issue within the context of a remedial statute. This is especially true when such procedural issues are the result of agency error, as is seemingly the case here regarding Ms. Langley's delay. The Court thus finds Ms. Langley filed a timely charge and moves to consider RIDOC's further arguments to dismiss the two remaining federal statutory claims.

### B. TITLE VII AND ADEA CLAIMS

RIDOC moves to dismiss Ms. Langley's Title VII and ADEA claims as time barred under the statute of limitations arguments discussed above.[3] Here, since the Court finds the Questionnaire is in fact a charge, all events Ms. Langley alleged in her complaint that occurred after July 3, 2018[4] are within the statute of limitations.

RIDOC further moves to dismiss Ms. Langley's retaliation claims under Title VII and the ADEA, arguing that she failed to exhaust her administrative remedies because her September 2020 charge only references how she continued to suffer from discrimination and retaliation without being more specific. This bald assertion, it argues is not enough to "outline the facts constituting the alleged violation." *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir. 1979).

There is no question a simple statement alleging retaliation does not give RIDOC a complete picture of Ms. Langley's retaliation charge. However, there is also no question that RIDOC was aware of the nature of the conduct she was claiming was

---

[3] RIDOC prophylactically raises the continuing violation doctrine, assuming Ms. Langley will try to bootstrap allegedly discriminatory but time-barred events to her claims. "Under the 'continuing violation' doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009)). It does not apply to discrete acts of alleged discrimination occurring on a particular day. *Id.* These discrete acts include "'termination, failure to promote, denial of transfer, or refusal to hire'." *Ayala*, 780 F.3d at 57 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Because Ms. Langley concedes she has sued over discrete acts of discrimination and retaliation, she cannot claim the continuing violation exception to the statute of limitations period.

[4] Title VII and ADEA both require an employee file a charge with the EEOC within 300 days after the alleged discriminatory or retaliatory conduct occurred. *See* 42 U.S.C.A. § 2000e–5(e)(1) (Title VII); 29 C.F.R. § 1626.7(a) (ADEA).

retaliatory. *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990) ("The scope of the civil complaint is [] limited to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge."); *Fantini v. Salem State Coll.*, 557 F.3d 22, 26-7 (1st Cir. 2009).

Ms. Langley's treatment was extensively documented, and RIDOC received the RICHR decision denying its motions to strike and dismiss. That decision indicated further investigations would be conducted into Ms. Langley's allegations of discrimination and retaliation stemming from the September 2020 charge. Considering the charge in its entirety, along with the RICHR's administrative investigation and final decision on RIDOC's motions, the Court finds Ms. Langley's retaliation claims fall within the scope of the charge and were "reasonably expected to grow out of that charge." *Id.; see also Arteaga v. Potter*, C.A. No. 10-171-S, 2011 WL 1134678, at *1 (D.R.I. Jan. 28, 2011). RIDOC's motion to dismiss based on failure to exhaust is denied.

## IV. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART RIDOC'S Motion to Dismiss. ECF No. 11. Ms. Langley's FEPA claim is DISMISSED; her Title VII and ADEA claims as specified in this Order remain. To ensure orderly progress of the case going forward, the Court ORDERS Ms. Langley to amend her Complaint to reflect the remaining claims.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

August 6, 2024

15